UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GREGORY GEORGE,

Plaintiff,

-against-

SHENZHEN TEJIALI TECHNOLOGY
CO., LTD., d/b/a IHEAT, SHEN ZHEN SHI
XIN CAI SHI XUN DIAN ZI KE JI YOU
XIAN GONG SI, d/b/a MIRROR ELEANOS,
and AMAZON.COM, INC.,

Defendants.

**VERIFIED COMPLAINT**

*Case No:*  6:24-CV-0956 (BKS/ML)

Plaintiff Gregory George, by and through his attorneys, Luibrand Law Firm, PLLC, hereby submits as and for a verified complaint against Defendants:

## NATURE OF ACTION

1.    This is a strict products liability and negligence action under the New York State common law arising out of serious and permanent injuries suffered by Gregory George while using a lithium battery-powered heated shoe insole manufactured by iHeat, sold by Mirror Eleanos, and distributed and retailed by Amazon.

## THE PARTIES

2.    Plaintiff Gregory George ("George" or "Plaintiff") is a citizen of the United States and a resident of Blue Mountain Lake, Hamilton County, State of New York.

3.    Defendant Shenzhen Tejiali Technology Co., Ltd., is a Chinese entity with a principal place of business at 29-31, 12F, Fuji Properties Building, No. 6018, Longgang Street, Shenzhen, Guangdong, China.

4.    Defendant Shenzhen Tejiali Technology Co., Ltd., is doing business as iHeat, a

1

manufacturer of battery-heated clothing, including insoles, and is hereinafter referred to as "iHeat".

5.    Defendant Shen Zhen Shi Xin Cai Shi Xun Dian Zi Ke Ji You Xian Gong Si is a Chinese entity with a principal place of business at Building D, Room 326, Xixian Huayuan Science and Technology Innovation Park, Xixiang Street, Shenzhen, Guangdong, China.

6.    Defendant Shen Zhen Shi Xin Cai Shi Xun Dian Zi Ke Ji You Xian Gong Si is doing business as Mirror Eleanos as a seller of iHeat products and is hereinafter referred to as "Mirror Eleanos".

7.    Defendant Amazon.com, Inc., ("Amazon") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 410 Terry Avenue North, Seattle, Washington.

8.    All defendants are hereinafter collectively referred to as "Defendants".

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 28 USC § 1332 because Plaintiff and Defendants are citizens of different states or countries and there is complete diversity between them, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs.

10.   This Court has personal jurisdiction over Amazon pursuant to NY CPLR § 302 because:

a.   Amazon transacts business within and contracts to supply goods or services in the State of New York through its highly interactive website accessible to consumers for the purposes of selling goods; provides advertisements throughout the State of New York; maintains a distribution, delivery and fulfillment network throughout the State of New York; and, specifically, Amazon offered, sold, and delivered the iHEAT heated insoles to George within the State of New York;

b.   The tortious act was committed within the State of New York;

c.   The tortious act was committed without the State of New York causing injury to a person within the State of New York and:

2

    i. Amazon regularly does and solicits business and derives substantial revenue from goods used or consumed in the State of New York, or

    ii. Amazon expects or should reasonably expect its acts to have consequences in the State of New York and it derives substantial revenue from interstate or international commerce; and/or

d. Amazon owns, uses, or possesses real property situated within the State of New York, including warehouses, fulfillment centers, and offices throughout the State of New York.

11. This Court has personal jurisdiction over iHeat and Mirror Eleanos pursuant to NY CPLR § 302 because:

a. iHeat maintains its own highly interactive website on which consumers can purchase products directly in order to transact business within and place its products into the stream of commerce of the State of New York;

b. iHeat and Mirror Eleanos regularly offer and sell their goods through Amazon.com, which permits iHeat and Mirror Eleanos to transact business within and place their products into the stream of commerce of the State of New York;

c. The tortious act was committed within the State of New York; and/or

d. The tortious act was committed without the State of New York causing injury to a person within the State of New York and:

    i. By using Amazon to sell their products, iHeat and Mirror Eleanos regularly do and solicit business and derive substantial revenue from goods used or consumed in the State of New York, or

    ii. By using Amazon to sell their products, iHeat and Mirror Eleanos expect or should reasonably expect their acts to have consequences in the State of New York and they derive substantial revenue from interstate or international commerce.

12. Venue is proper pursuant to 28 USC § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of New York.

## FACTS

### *The Incident*

13. On November 27, 2023, George placed an order on Amazon.com, order number 112-6401696-2700212, for a pair of "iHEAT Heated Insoles with Remote Control, Rechargeable,

Essential for Winter Outdoor Hiking, Sports, and Camping (Black L (US Woman's 9.5-15, Man's 8-13.5)" (hereinafter referred to as "iHEAT heated insoles").

14.    The iHEAT heated insoles were shipped on November 29, 2023 and delivered to George's home in Blue Mountain Lake, New York, on December 4, 2023.

15.    The packaging that the iHEAT heated insoles were delivered in was a cardboard box with Amazon's logos on it.

16.    The iHEAT heated insoles were packaged in a separate box with iHeat's logo on it.

17.    The iHeat box had no writings or indications that the batteries inside the insoles were lithium.

18.    On April 5, 2024, George turned on his iHEAT heated insoles in accordance with the instructions, put them in his boots, put socks on his feet, and put his boots on.

19.    The iHEAT heated insoles could be set to one of three different heat levels with a remote control.

20.    George set the temperature level of his iHEAT heated insoles to medium, which could heat to a temperature range of 122-131°F.

21.    George had made no alterations or changes to the lithium battery or heating mechanism in the iHEAT heated insoles.

22.    George was using the iHEAT heated insoles as intended for the purpose of keeping his feet warm in cold temperatures.

23.    George walked outside his house and, after about five minutes, he felt an electric shock to his right foot and his right boot burst into flames.

24.    George had to cut the laces off of his right boot with a knife in order to get the boot off, which took approximately 40 seconds.

4

25.     George's right foot was severely burned, the skin of his right foot was blackened and some had started to peel off, and he was in extreme pain. He placed his foot in some snow on the ground for temporary relief before walking back into the house.

26.     Inside his house, George's wife and son applied cold water and gauze to George's right foot, and George was able to take off some of the skin that began peeling off.

27.     George's son took photographs of his foot:

 

28.     George's son drove him to Warrensburg Health Center in Warrensburg, New York, to seek treatment, but they were unable to help, so they sent George to Glens Falls Hospital in Glens Falls, New York.

29.     At Glens Falls Hospital, it was determined that George was suffering second-degree burns, as well as full-thickness, or third-degree, burns covering 1.5% of his right foot.

30.     While at Glens Falls Hospital, George received pain medication and underwent debridement of loose-hanging skin on his right foot.

31.     George was then referred to the Westchester Medical Center Burn Center in Valhalla, New York.

32. An ambulance was not available for transportation, so George was driven by his son in his private car to the Westchester Medical Center Burn Center approximately four hours south of Blue Mountain Lake, New York.

33. George was admitted to Westchester Medical Center from April 5, 2024 to April 9, 2024 for in-patient daily wound care of his right foot.

34. After George's discharge from Westchester Medical Center on April 9, 2024, he and his wife returned home and cared for his wounds until his next appointment.

35. At Westchester Medical Center on April 17, 2024, George underwent skin grafting using donor skin from two locations on his right thigh to replace the skin that was burned on his right foot and a wound vac was applied.

36. George was then admitted to in-patient care for post-operation wound monitoring until April 26, 2024, during which his wound vac was removed and he underwent physical and occupational therapy.

37. George's mobility was severely impaired as he could not bear weight on his right foot due to the burns and treatment he received.

38. George was required to walk with crutches or a walker for two weeks, after which he used a special walking boot.

39. George serves as the fire chief for the volunteer fire department in Blue Mountain Lake, New York. Because of his injuries, he has been absent from work duties for three (3) months and continues to be absent from his duties.

40. George has not been able to perform household chores for three (3) months and continues to be unable to do so, including snow removal and maintaining the home heating system, which his wife had to perform instead.

41.    George also could not finish the home improvement projects that he had started prior to being injured, and his adult children and son-in-law had to finish those projects for him.

42.    Because of the distance between their home and Westchester Medical Center, George and his wife incurred costs for traveling and lodging in the Valhalla, New York, area when George had appointments and received in-patient care.

43.    George suffered and continues to suffer significant permanent scarring and disfigurement as a result of his injuries.

### ***Fulfillment by Amazon***

44.    Amazon operates Amazon.com as an online marketplace in which Amazon and third-party sellers sell products to consumers.

45.    Third-party sellers must create a Seller Central Account, which allows sellers to, among other things, list and price products, manage inventory, fulfill orders, create promotions and coupons, and other sales-management related functions.

46.    The seller enters into a contract with Amazon and pays Amazon a monthly subscription fee.

47.    Sellers are subject to a code of conduct and policies which, if violated, could lead to Amazon suspending their accounts, forfeiting payments, and removing selling privileges.

48.    Amazon also collects fees for referral, closing, high-volume listing, refund administration, restocking, and other selling fees.

49.    Sellers can also contract with Amazon for specific services such as Fulfillment by Amazon ("FBA"), where the seller outsources its order fulfillment to Amazon and Amazon manages inventory storage, packaging, shipping, customer service, returns, and exchanges for sellers.

50. Sellers register their products with Amazon and each product receives a unique Amazon Standard Identification Number ("ASIN") used for identifying the product in Amazon's catalog.

51. Sellers send their products to an Amazon warehouse or fulfillment center, where Amazon stores the product until it is purchased by a consumer.

52. Amazon can also apply Amazon barcodes to the products as they arrive at the fulfillment center.

53. When a purchase is made, Amazon fulfillment center employees select the product, package it, and ship it to the consumer.

54. Amazon collects consumers' payments for products and either deposits them into sellers' registered bank accounts or holds them in account level reserves to ensure that the sellers can fulfill financial obligations.

55. Consumers can leave feedback on the product's Amazon page and any negative feedback related to Amazon's fulfillment of the order can be stricken through upon sellers' request.

56. With regard to managing consumer returns, Amazon determines whether the product can be returned and resold, whether to issue a replacement to the consumer, and what the allowable return time frame will be.

57. Sellers are allowed to contact consumers in limited circumstances and only through Amazon-approved channels.

58. Amazon also offers Supply Chain by Amazon, which offers FBA and other services to sellers including inventory pick-up directly from the manufacturing facilities, shipping it across borders, handling customs clearance, and managing inventory replenishment across Amazon and other sales channels such as wholesalers and business partners.

59. Through the above actions by Amazon, Amazon exercises sufficient control over third party sellers' products so as to be a retailer and/or distributor of goods.

60. iHeat is the manufacturer of the subject heated insole.

61. iHeat sells its heated insole on its own website and on Amazon.

62. iHeat does not have a physical office or place of operations in the United States.

63. Mirror Eleanos sold iHeat's heated insole on Amazon.

64. Mirror Eleanos does not have a physical office or place of operations in the United States.

65. Mirror Eleanos is a merchant that sells products on Amazon through, upon information and belief, the FBA program and/or Supply Chain by Amazon.[1]

66. Mirror Eleanos relies upon Amazon to list, sell, distribute, and/or deliver its products to consumers in the United States.

67. Amazon, as retailer and distributor of the iHEAT heated insoles, received George's order, selected the product to send to George, packaged the iHEAT heated insoles, shipped the iHEAT heated insoles, and delivered the iHEAT heated insoles to George's residence.

### The iHEAT Heated Insoles

68. The iHEAT heated insoles are advertised as shoe insoles that keep the user's feet warm in cold temperatures.

69. With a remote control similar to a vehicle fob remote, the user can turn the power on and off and adjust the heat settings of the iHEAT heated insoles to one of three levels: low, medium, or high.

70. In the low setting, the iHEAT heated insoles can heat up to a range of 104-113°F

---

[1] As of the date of this Complaint, the product that George purchased from Mirror Eleanos is no longer listed for sale on Amazon.

for up to 10 hours.

71.    In the medium setting, the iHEAT heated insoles can heat up to a range of 122-131°F for up to six (6) hours.

72.    In the high setting, the iHEAT heated insoles can heat up to a range of 140-149°F for up to four (4) to five (5) hours.

73.    The iHEAT heated insoles are powered by rechargeable 3.7V 3500mAh[2] lithium-ion batteries, which come included.

74.    The USB charging input and power switch are located in the heel of the iHEAT heated insole.

75.    Lithium-ion batteries can catch fire or explode without warning if they are overheated, damaged, defective, or have short-circuited in a phenomenon called thermal runaway.

76.    The fires and explosions caused by lithium-ion batteries can be deadly. For instance, in New York City in 2022, at least 200 building fires and 6 deaths were caused by lithium-ion battery fires.[3]

77.    There have been other documented reports of heated insoles catching fire and burning the users, including one in Burlington, Canada,[4] one in Michigan,[5] and two that are the subjects of two current cases filed in the US District Courts of New Hampshire and New Jersey. Sharps v. Shenzhen Tejiali Technology Co., Ltd., No. 1:24-CV-32-JL-TSM (DNH 2024); Flaherty

---

[2] The description of the item under "About this item" states that the battery is 3500mAh, but one of the product photographs states that the battery is 3000mAh.
[3] Samantha Murphy Kelly, Lithium-ion battery fires are happening more often. Here's how to prevent them, CNN Business, https://www.cnn.com/2023/03/09/tech/lithium-ion-battery-fires/index.html (last updated Mar. 9, 2023, 11:40 AM).
[4] Denette Wilford, Burlington man suffers burns after Amazon insoles catch fire, Toronto Sun, https://torontosun.com/news/local-news/burlington-man-suffers-burns-after-amazon-insoles-catch-fire (last updated Dec. 29, 2023).
[5] GoodLuckVarsity, The Team and I are both on Fire: My Wild Game Day Experience, MGOBlog (Nov. 27, 2023) https://www.mgoblog.com/mgoboard/team-and-i-are-both-fire-my-wild-game-day-experience.

v. Amazon.com Inc., et al., No. 2:24-cv-05082-CP-CLW (DNJ 2024).

78.    Extremely cold temperatures can also cause lithium-ion batteries to degrade and short-circuit.

79.    Amazon recognizes the dangers of lithium-ion batteries, stating in its FBA products restrictions: "If damaged, dropped, crushed, or short-circuited, they can release dangerous amounts of heat and may ignite."[6]

80.    No warnings with regard to the lithium-ion batteries were written on the box that the iHEAT heated insoles were packaged in or provided in pamphlets or other papers inside the box.

81.    No warnings with regard to the lithium-ion batteries were published on the page for the iHEAT heated insoles that George purchased.

**AS AND FOR A FIRST CAUSE OF ACTION
AGAINST DEFENDANT iHEAT:**

**<u>Strict Products Liability – Design Defect</u>**

82.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 79 as though fully stated herein.

83.    iHeat manufactured and designed the iHEAT heated insoles.

84.    The iHEAT heated insoles were defective when they left the control of iHeat.

85.    The iHEAT heated insoles were unreasonably dangerous for their intended use.

86.    George was using the iHEAT heated insoles as intended and in a reasonably foreseeable manner.

87.    The iHEAT heated insoles, as designed, posed a substantial likelihood of harm in

---

[6] Requirements for lithium batteries and products powered by lithium batteries, Amazon seller central, https://sellercentral.amazon.com/help/hub/reference/external/200383420 (last visited June 26, 2024).

that the use of lithium batteries increased the risk of the iHEAT heated insole catching fire or exploding while being used as intended, and/or the placement of the lithium batteries in the heel of the insoles increased the risk of damage to the lithium batteries, thereby increasing the risk of fire or explosion and injury to the user while being used as intended, and/or the exposure to the extreme hot and/or cold temperatures increased the risk of damage to the lithium batteries, thereby increasing the risk of fire or explosion and injury to the user while being used as intended.

88.    It was feasible to design the iHEAT heated insole in a safer manner, namely that a safer alternative to lithium batteries could have been used and/or greater protection could have been placed around the batteries to shield from damage and/or exposure from extreme hot and/or cold temperatures could have been added.

89.    The design defects were the sole and proximate cause of George's injuries and damages.

90.    As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST DEFENDANT iHEAT:**

**<u>Strict Products Liability – Manufacturing Defect</u>**

91.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 88 as though fully stated herein.

92.    The iHEAT heated insoles were defective due to an error in the manufacturing process, improper workmanship, and/or because defective materials were used in the manufacturing of the product.

93. The iHEAT heated insoles were defective when they left the control of iHeat.

94. Due to iHeat's defective manufacturing, the iHEAT heated insoles deviated from the expected performance of heated insoles of like kind and quality in that it is not expected that heated insoles of like kind and quality would catch fire in the ordinary course of their use as shoe insoles.

95. George did not contribute to the cause of the fire of the heated insoles.

96. The manufacturing defects were the sole and proximate cause of George's injuries as alleged.

97. As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

**AS AND FOR A THIRD CAUSE OF ACTION
AGAINST DEFENDANT iHEAT:**

**Strict Products Liability – Failure to Warn**

98. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 95 as though fully stated herein.

99. The iHEAT heated insoles were defective when they left the control of iHeat.

100. iHeat owed a duty to consumers to warn them of the dangers of fire and explosion that can happen if lithium batteries are damaged, short-circuiting, overcharging, and overheating.

101. iHeat knew or should have known of latent dangers resulting from the intended use of the iHEAT heated insoles, namely that damaged, overheated, and overcharged lithium batteries could short circuit, catch fire, and explode.

102. iHeat failed to give any warnings or instruction about the dangers inherent in the

use of lithium batteries.

103. iHeat's failure to provide warnings was the proximate cause of George's harm.

104. As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

**AS AND FOR A FOURTH CAUSE OF ACTION
AGAINST DEFENDANT iHEAT:**

**<u>Negligence</u>**

105. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 102 as though fully stated herein.

106. iHeat owed a duty to consumers, including George, to exercise reasonable care in properly designing, manufacturing, testing, marketing, advertising, labeling, packaging, selling, and providing adequate warnings for the iHEAT heated insole.

107. iHeat breached its duty by failing to use reasonable care in the designing, manufacturing, testing, marketing, advertising, labeling, packaging, selling, and providing adequate warnings for the iHEAT heated insole so that the iHEAT heated insole was rendered defective and reasonably certain to be dangerous.

108. iHeat's negligent designing, manufacturing, testing, marketing, advertising, labeling, packaging, selling, and failure to provide warnings for the iHEAT heated insole was the sole and proximate cause of George's injuries.

109. As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past

14

and future medical expenses, lost past and future wages, and emotional distress.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANT MIRROR ELEANOS:

### Strict Products Liability – Design Defect

110.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 107 as though fully stated herein.

111.    Mirror Eleanos sold the iHEAT heated insoles in the normal and regular course of its business.

112.    The iHEAT heated insoles were defective when they left the control of Mirror Eleanos.

113.    The iHEAT heated insoles were unreasonably dangerous for their intended use.

114.    George was using the iHEAT heated insoles as intended and in a reasonably foreseeable manner.

115.    The iHEAT heated insoles, as designed, posed a substantial likelihood of harm in that the use of lithium batteries increased the risk of the iHEAT heated insole catching fire or exploding while being used as intended, and/or the placement of the lithium batteries in the heel of the insoles increased the risk of damage to the lithium batteries, thereby increasing the risk of fire or explosion and injury to the user while being used as intended, and/or the exposure to the extreme hot and/or cold temperatures increased the risk of damage to the lithium batteries, thereby increasing the risk of fire or explosion and injury to the user while being used as intended.

116.    It was feasible to design the iHEAT heated insole in a safer manner, namely that a safer alternative to lithium batteries could have been used and/or greater protection could have been placed around the batteries to shield from damage and/or exposure from extreme hot and/or cold temperatures could have been added.

15

117. The design defects were the sole and proximate cause of George's injuries and damages.

118. As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**AGAINST DEFENDANT MIRROR ELEANOS:**

**Strict Products Liability – Manufacturing Defect**

119. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 116 as though fully stated herein.

120. Mirror Eleanos sold the iHEAT heated insoles in the normal and regular course of its business.

121. The iHEAT heated insoles were defective due to an error in the manufacturing process, improper workmanship, and/or because defective materials were used in the manufacturing of the product.

122. The iHEAT heated insoles were defective when they left the control of Mirror Eleanos.

123. Due to defective manufacturing, the iHEAT heated insoles deviated from the expected performance of heated insoles of like kind and quality in that it is not expected that heated insoles of like kind and quality would catch fire in the ordinary course of their use as shoe insoles.

124. George did not contribute to the cause of the fire of the heated insoles.

125. The manufacturing defects were the sole and proximate cause of George's injuries as alleged.

126.    As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

**AS AND FOR A SEVENTH CAUSE OF ACTION
AGAINST DEFENDANT MIRROR ELEANOS:**

**<u>Strict Products Liability – Failure to Warn</u>**

127.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 124 as though fully stated herein.

128.    Mirror Eleanos sold the iHEAT heated insoles in the normal and regular course of its business.

129.    The iHEAT heated insoles were defective when they left the control of Mirror Eleanos.

130.    Mirror Eleanos owed a duty to consumers to warn them of the dangers of fire and explosion that can happen if lithium batteries are damaged, short-circuiting, overcharging, and overheating.

131.    Mirror Eleanos knew or should have known of latent dangers resulting from the intended use of the iHEAT heated insoles, namely that damaged, overheated, and overcharged lithium batteries could short circuit, catch fire, and explode.

132.    Mirror Eleanos failed to give any warnings or instruction about the dangers inherent in the use of lithium batteries.

133.    Mirror Eleanos' failure to provide warnings was the proximate cause of George's harm.

134.    As a direct and proximate result of the foregoing, and through no fault of his own,

George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

**AS AND FOR AN EIGHTH CAUSE OF ACTION
AGAINST DEFENDANT MIRROR ELEANOS:**

**Negligence**

135.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 132 as though fully stated herein.

136.     Mirror Eleanos sold the iHEAT heated insoles in the normal and regular course of its business.

137.     Mirror Eleanos owed a duty to consumers, including George, to exercise reasonable care in properly designing, manufacturing, testing, marketing, advertising, labeling, packaging, selling, and providing adequate warnings for the iHEAT heated insole.

138.     Mirror Eleanos breached its duty by failing to use reasonable care in the designing, manufacturing, testing, marketing, advertising, labeling, packaging, selling, and providing adequate warnings for the iHEAT heated insole so that the iHEAT heated insole was rendered defective and reasonably certain to be dangerous.

139.     Mirror Eleanos' negligent designing, manufacturing, testing, marketing, advertising, labeling, packaging, selling, and failure to provide adequate warnings for the iHEAT heated insole was the sole and proximate cause of George's injuries.

140.     As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

18

**AS AND FOR A NINTH CAUSE OF ACTION
AGAINST DEFENDANT AMAZON:**

**Strict Products Liability – Design Defect**

141.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 138 as though fully stated herein.

142.    Amazon was the retailer and distributor of the iHEAT heated insoles in that Amazon stored, selected, packaged, shipped, and delivered the iHEAT heated insoles to George.

143.    The iHEAT heated insoles were defective when they left the control of Amazon.

144.    The iHEAT heated insoles were unreasonably dangerous for their intended use.

145.    George was using the iHEAT heated insoles as intended and in a reasonably foreseeable manner.

146.    The iHEAT heated insoles, as designed, posed a substantial likelihood of harm in that the use of lithium batteries increased the risk of the iHEAT heated insole catching fire or exploding while being used as intended, and/or the placement of the lithium batteries in the heel of the insoles increased the risk of damage to the lithium batteries, thereby increasing the risk of fire or explosion and injury to the user while being used as intended, and/or the exposure to the extreme hot and/or cold temperatures increased the risk of damage to the lithium batteries, thereby increasing the risk of fire or explosion and injury to the user while being used as intended.

147.    It was feasible to design the iHEAT heated insole in a safer manner, namely that a safer alternative to lithium batteries could have been used and/or greater protection could have been placed around the batteries to shield from damage and/or exposure from extreme hot and/or cold temperatures could have been added.

148.    The design defects were the sole and proximate cause of George's injuries and damages.

19

149.    As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

**AS AND FOR A TENTH CAUSE OF ACTION
AGAINST DEFENDANT AMAZON:**

**Strict Products Liability – Manufacturing Defect**

150.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 147 as though fully stated herein.

151.    Amazon was the retailer and distributor of the iHEAT heated insoles in that Amazon stored, selected, packaged, shipped, and delivered the iHEAT heated insoles to George.

152.    The iHEAT heated insoles were defective due to an error in the manufacturing process, improper workmanship, and/or because defective materials were used in the manufacturing of the product.

153.    The iHEAT heated insoles were defective when they left the control of Amazon.

154.    Due to the defective manufacturing, the iHEAT heated insoles deviated from the expected performance of heated insoles of like kind and quality in that it is not expected that heated insoles of like kind and quality would catch fire in the ordinary course of their use as shoe insoles.

155.    George did not contribute to the cause of the fire of the heated insoles.

156.    The manufacturing defects were the sole and proximate cause of George's injuries as alleged.

157.    As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past

and future medical expenses, lost past and future wages, and emotional distress.

**AS AND FOR AN ELEVENTH CAUSE OF
ACTION AGAINST DEFENDANT AMAZON:**

**<u>Strict Products Liability – Failure to Warn</u>**

158.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 155 as though fully stated herein.

159.    Amazon was the distributor of the iHEAT heated insoles in that Amazon stored, selected, packaged, shipped, and delivered the iHEAT heated insoles to George.

160.    The iHEAT heated insoles were defective when they left the control of Amazon.

161.    Amazon owed a duty to consumers to warn them of the dangers of fire and explosion that can happen if lithium batteries are damaged, short-circuiting, overcharging, and overheating.

162.    Amazon knew or should have known of latent dangers resulting from the intended use of the iHEAT heated insoles, namely that damaged, overheated, and overcharged lithium batteries could short circuit, catch fire, and explode.

163.    Amazon failed to give any warnings or instruction about the dangers inherent in the use of lithium batteries.

164.    Amazon's failure to provide warnings was the proximate cause of George's harm.

165.    As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

## AS AND FOR A TWELFTH CAUSE OF
## ACTION AGAINST DEFENDANT AMAZON:

### Negligence

166. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 163 as though fully stated herein.

167. Amazon was the distributor of the iHEAT heated insoles in that Amazon stored, selected, packaged, shipped, and delivered the iHEAT heated insoles to George.

168. Amazon owed a duty to consumers, including George, to exercise reasonable care in properly designing, manufacturing, marketing, labeling, selling, packaging, shipping, distributing, and providing adequate warnings for the iHEAT heated insole.

169. Amazon breached its duty by failing to use reasonable care in the manufacturing, marketing, labeling, selling, packaging, shipping, distributing, and providing adequate warnings of the iHEAT heated insole so that the iHEAT heated insole was rendered defective and reasonably certain to be dangerous.

170. Amazon's negligent designing, manufacturing, marketing, labeling, selling, packaging, shipping, distributing, and providing adequate warnings for the iHEAT heated insole was the sole and proximate cause of George's injuries.

171. As a direct and proximate result of the foregoing, and through no fault of their own, George suffered second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain and suffering, past and future medical expenses, lost past and future wages, and emotional distress.

### JURY DEMAND

172. Plaintiff demands a trial by jury as to all issues so triable.

22

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff Gregory George demands judgment in his favor against all

Defendants on each of the above causes of action and for the following:

1. Compensatory damages in excess of the jurisdictional amount, including, but not limited to, pain and suffering, emotional distress, significant and permanent scarring and disfigurement, impaired mobility, property damage, medical expenses, out-of-pocket expenses, and lost wages, in an amount to be determined at trial of this action;

2. Punitive damages for the wanton, willful, fraudulent, and reckless acts of the Defendants which constitute gross negligence, as Defendants demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff, in an amount to be determined at trial of this action;

3. Pre- and post-judgment interest;

4. Costs and expenses; and

5. Such other and further relief as this Court deems just, proper, and equitable.

Dated: August 2, 2024
      Latham, New York

Yours, etc.,
LUIBRAND LAW FIRM, PLLC

*Kevin A. Luibrand*

Kevin A. Luibrand, Esq.
*Attorneys for Plaintiff*
950 New Loudon Road, Suite 270
Latham, New York 12110
Tel.: (518)783-1100
Fax: (518)783-1901
E-mail: kluibrand@luibrandlaw.com