UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GREGORY GEORGE,

                          Plaintiff,                          6:24-cv-00956 (BKS/ML)

v.

SHENZHEN TEJIALI TECHNOLOGY CO., LTD., d/b/a
IHEAT

                          Defendant.
_____

**Appearances:**

*For Plaintiff:*
Kevin A. Luibrand
Luibrand Law Firm, PLLC
950 New Loudon Road
Latham, NY 12110

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Gregory George brought this strict products liability and negligence action against Defendants Shenzhen Tejiali Technology Co., Ltd., doing business as iHeat; Shen Zhen Shi Xin Cai Shi Xun Dian Zi Ke Ji You Xian Gong Si, doing business as Mirror Eleanos; and Amazon.com, Inc. His claims arise from injuries he suffered while using heated shoe insoles manufactured by iHeat, sold by Mirror Eleanos, and distributed and retailed by Amazon. (Dkt No. 1, ¶ 1). Defendants Mirror Eleanos and Amazon have been dismissed from this action. (Dkt. Nos. 37–39). iHeat has not answered the complaint or appeared in this action. (Dkt. No. 33-1, ¶ 4). George moves for a default judgment against iHeat under Federal Rule of Civil Procedure 55(b)(2) and Local Rule of Practice for the United States District Court for the Northern District

of New York ("Local Rule") 55.2(b) and requests a hearing to determine the amount of damages. (Dkt. No. 33). For the reasons that follow, that motion is granted.

## II.    FACTUAL BACKGROUND[1]

George, who lives in New York, ordered and received a pair of lithium battery-powered heated shoe insoles from Amazon. (Dkt. No. 1, ¶¶ 1–2,13–14). The insoles were manufactured by iHeat, a foreign entity, with a principal place of business in Shenzhen, Guangdong, People's Republic of China. (*Id.* at ¶¶ 1,3).

iHeat's insoles packaging "had no writings or indications that the batteries inside the insoles were lithium." (*Id.* ¶ 17). George meant to use the insoles "as intended for the purpose of keeping his feet warm in cold temperatures," (*id.* at ¶ 22), and "made no alterations or changes to the lithium battery or heating mechanism" in the insoles, (*id.* at ¶ 21).

George turned the insoles on "in accordance with the instructions, put them in his boots, put socks on his feet, and put his boots on." (*Id.* at ¶ 18). He set the insoles to the medium setting (which could heat to a temperature range of 122–131°F) and walked outside. (*Id.* at ¶¶ 20, 23). Around five minutes later, "he felt an electric shock to his right foot and his right boot burst into flames." (*Id.* at ¶ 23). It took him about 40 seconds to take the boot off. (*Id.* at ¶ 24).

"George's right foot was severely burned, the skin of his right foot was blackened and some had started to peel off, and he was in extreme pain." (*Id.* at ¶ 25). He went to the hospital,

---

[1] Except where otherwise indicated, all facts set forth herein are based on George's complaint. (Dkt. No. 1). Because iHeat failed to respond to the complaint, the well-pled allegations therein are deemed admitted and assumed to be true for purposes of this motion. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim." (quoting *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004))).

where he was diagnosed with "second-degree burns, as well as full-thickness, or third-degree, burns covering 1.5% of his right foot." (*Id.* at ¶ 29). The affected skin was debrided, and he was referred to a burn center for further care. (*Id.* at ¶¶ 30–31). There, he received in-patient wound care for five days. (*Id.* at ¶ 33). He later returned to the burn center for "skin grafting using donor skin from two locations on his right thigh to replace the skin that was burned on his right foot." (*Id.* at ¶ 35). He remained at the center for inpatient care for ten days. (*Id.* at ¶ 36).

Following the injury, George's mobility was "severely impaired" because he could not bear weight on his foot and "was required to walk with crutches or a walker for two weeks, after which he used a special walking boot." (*Id.* at ¶¶ 37–38). He was not able to continue as fire chief for his local volunteer fire department for three months and, as of the filing of his complaint, "continues to be absent from his duties." (*Id.* at ¶ 39). In addition, for the same period, he has not been able to perform household chores or finish home improvement projects. (*Id.* at ¶¶ 40–41). George and his wife incurred costs for traveling and lodging to receive medical care. (*Id.* at 42). He "suffered and continues to suffer significant permanent scarring and disfigurement as a result of his injuries." (*Id.* at ¶ 43).

**III.    DISCUSSION**

**A.  Procedural Requirements for Default Judgment**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Local Rule 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing": (1) "the party against whom it seeks a judgment . . . is not an

infant or an incompetent person," (2) the "party against whom it seeks a judgment . . . has failed to plead or otherwise defend the action," and (3) "it has properly served the pleading to which the opposing party has not responded"). Second, under Federal Rule of Civil Procedure 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestley*, 647 F.3d at 505; *see also* Local Rule 55.2(b).

### B. Plaintiff's Entitlement to a Default Judgment

George is entitled to a default judgment only if iHeat was properly served with the complaint and failed to timely respond. Federal Rule of Civil Procedure 4(f) governs service to iHeat because its principal place of business is not in the United States. Rule 4(f) permits service of process upon an individual abroad "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1). Because both China—where iHeat has its principal place of business—and the United States are signatories to the Hague Convention, "service of process on the [defendant] in China must conform to the requirements of the Hague Convention." *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, No. 17-cv-00052, 2020 WL 5258313, at *4, 2020 U.S. Dist. LEXIS 161142, at *10 (N.D.N.Y. Sep. 3, 2020) (citation modified) (quoting *Unite Nat'l Ret. Fund v. Ariela, Inc.*, 643 F. Supp. 2d 328, 332-33 (S.D.N.Y. 2008); *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) ("[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies.").

George filed a certificate of service completed by a Central Authority of China, indicating that the complaint was properly served on iHeat on December 13, 2024. (Dkt. No. 16, Dkt. No. 21). "It is well settled that the return of a completed certificate of service by a Central Authority establishes prima facie evidence that the Central Authority's service on [the defendant] was made in compliance with the [Hague] [C]onvention" and with the foreign state's "internal laws." *Unite*

4

*Nat'l Ret. Fund,* 643 F. Supp. 2d at 334-35. Because the Certificate of Service filed by George provides prima facie evidence that service on iHeat was proper, and no party has sought to challenge such service, this Court finds that iHeat was properly served with the complaint.

iHeat failed to answer or otherwise respond to the complaint within the twenty-one days allowed under Federal Rule of Civil Procedure 12(a)(1). George properly requested a clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. No. 27). On May 28, 2025, George received a clerk's entry of default. (Dkt. No. 28). On June 30, 2025, George moved for default judgment under Federal Rule of Civil Procedure 55(b). (Dkt. No. 33). He served the motion on iHeat by mail, (*see* Dkt. No. 34 (affidavit of service)), but iHeat has not filed a response. George, therefore, appears to have met the procedural requirements for an order of default under Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2(b).

### C. Personal Jurisdiction

Like here, where a defendant has not appeared, the Court may first "assure itself" that it has personal jurisdiction over the defendant before it grants a motion for default judgment. *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). While the Second Circuit has "left open the question 'whether a district court *must* investigate its personal jurisdiction over [a] defendant before entering a default judgment,'" a "default judgment is 'void' [within the meaning of Federal Rule of Civil Procedure 60(b)(4)] if it is rendered by a court that lacks jurisdiction over the parties." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133, 138 (2d Cir. 2011) (alteration in original) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) and *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008)); *see also Weitsman v. Levesque*, No. 17-cv-00727, 2019 WL 7503022, at *2–5, 2019 U.S. Dist. LEXIS 225002 (N.D.N.Y. Jan. 11, 2019) (considering personal jurisdiction *sua sponte* on a motion for default judgment as to damages

and, after finding lack of personal jurisdiction, vacating prior order granting motion for default judgment as to liability). Because iHeat has not appeared in this matter or consented to this Court's jurisdiction, this Court will follow the Second Circuit's guidance and "assure itself" that it may properly exercise jurisdiction over iHeat.

Given that George has not asserted any basis to exercise general jurisdiction over iHeat and iHeat's principal place of business is in China, the Court evaluates whether it has specific personal jurisdiction over iHeat. *See Gucci Am. Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) ("Aside from 'an exceptional case' . . . a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014))).

"Specific [personal] jurisdiction exists when 'a [forum] exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]'" *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 659, 673–74 (2d Cir. 2013) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996). To evaluate whether it may exercise specific personal jurisdiction over a defendant, the Court first looks to whether it has a statutory basis for such jurisdiction under New York's long-arm statute, *see Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013), and then, "[i]f the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). In evaluating whether it has personal jurisdiction over iHeat, the Court may consider evidence

outside of the complaint. *See Vasquez v. H.K. & Shanghai Banking Corp., Ltd.*, 477 F.Supp.3d 24, 245 n.1 (S.D.N.Y. 2020).

### 1. Transacting Business—N.Y. C.P.L.R. § 302(a)(1)

George argues that the Court may exercise personal jurisdiction over iHeat pursuant to N.Y. C.P.L.R. § 302. (Dkt. No. 1, ¶ 11). N.Y. C.P.L.R. § 302(a)(1) permits the exercise of jurisdiction over a nondomiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." In determining whether personal jurisdiction may be exercised under this provision, "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (alteration in original) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). Under Section 302(a)(1), "[p]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Chloe*, 616 F.3d at 163)).

To determine "whether a defendant who sells through Internet storefronts is subject to personal jurisdiction, courts distinguish between 'commercial vendors who use it as a means for establishing regular business with a remote forum' and 'occasional sellers who use an internet service once to sell goods to the highest bidder who happens to be in the forum state.'" *Pearson Educ., Inc. v. ABC Books LLC*, No. 19-cv-7642, 2020 WL 3547217, at *6, 2020 U.S. Dist. LEXIS 117040, at *18 (S.D.N.Y. June 30, 2020) (quoting *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 412 (S.D.N.Y. 2017)). "Personal jurisdiction has been found to be proper as to those in the first category, but improper as to those in the second

7

category 'assuming no additional contacts with the forum state.'" *Id.* (quoting *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, No. 15-cv-8459, 2016 WL 378480, at *3, 2016 U.S. Dist. LEXIS 89149, at *9 (S.D.N.Y. July 8, 2016)). The Second Circuit has explained that "a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant . . . through the website, 'purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc.*, 490 F.3d at 252 (alteration in original) (citations omitted).

George alleges that "iHeat sells its heated insole on its own website and on Amazon," (Dkt. No. 1, at ¶ 61), and that Mirror Eleanos is "a seller of iHeat products" on Amazon. (*Id.* at ¶¶ 6, 63). According to George, "iHeat and Mirror Eleanos regularly offer and sell their goods through Amazon.com, which permits iHeat and Mirror Eleanos to transact business within and place their products into the stream of commerce of the State of New York." (*Id.* at ¶ 11). iHeat's sales on its website and on Amazon are sufficient to confer jurisdiction over iHeat under N.Y. C.P.L.R. § 302(a)(1).[2] *See Poppington, LLC v. Brooks*, No. 20-cv-8616, 2021 WL 3193023, at *2, 2021 U.S. Dist. LEXIS 140262 (S.D.N.Y. July 27, 2021) (finding that the defendant was in the "category of commercial vendors conducting regular business through Amazon," and thus was subject to jurisdiction under Section 302(a)(1), where "she [sold] her books exclusively through Amazon and estimate[d] that she ha[d] sold 1,500 books through the platform in the last 5 years"); *Poof-Slinky, LLC v. A.S. Plastic Toys Co.*, No. 19-cv-9399, 2020 WL 5350537, at *4–5, 2020 U.S. Dist. LEXIS 162529, at *10–13 (S.D.N.Y. Sep. 4, 2020) (finding that the

---

[2] Because the Court finds that it has jurisdiction over iHeat based on N.Y. C.P.L.R. § 302(a)(1), the Court does not analyze whether it has jurisdiction over iHeat under any of the other provisions of N.Y. C.P.L.R. § 302. *See Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-cv-3673, 2012 WL 123989, at *5 n.4, 2011 U.S. Dist. LEXIS 150742, at *15 n.4 (S.D.N.Y. Jan. 3, 2012).

defendants were subject to personal jurisdiction under Section 302(a)(1) where the defendants used highly interactive third-party websites and a company hired by plaintiff "engaged in at least one transaction with each . . . [d]efendant to purchase allegedly counterfeit products for shipment to New York"); *Pearson Educ., Inc.*, 2020 WL 3547217, at *6–8, 2020 U.S. Dist. LEXIS 117040, at *16–24 (finding that defendant was subject to personal jurisdiction under Section 302(a)(1) where defendant regularly sold textbooks, including to customers in New York, via online marketplaces such as Amazon, even though the allegedly infringing products were not sold in New York).

### 2. Due Process

"Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This inquiry requires "a two-step analysis." *Id.* (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68). First, the Court must decide whether the defendant "has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Id.* The minimum contacts inquiry "focuses on the relationship among the defendant, the forum and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citation modified). To determine if a defendant has sufficient contacts with the forum to justify the Court's exercise of specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* Second, the Court must decide "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

For the same reasons that iHeat's conduct satisfies N.Y. C.P.L.R. § 302(a)(1), asserting personal jurisdiction over iHeat comports with due process. *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468–69 (S.D.N.Y. 2008) ("[T]he Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard."). This conduct includes George's allegations that iHeat "regularly offer[ed] and s[old] [its] goods through Amazon.com, which permit[ted] iHeat . . . to transact business within and place [its] products into the stream of commerce into the State of New York and that "[b]y using Amazon to sell [its] products, iHeat . . . regularly do[es] and solicit[s] business and derive[s] substantial revenue from goods used or consumed in the State of New York." (Dkt. No. 1, at ¶ 11); *see Poof-Slinky, LLC*, 2020 WL 5350537, at *5, 2020 U.S. Dist. LEXIS 162529, at *14–15 (finding that the plaintiff "asserted sufficient minimum contacts to satisfy Due Process" where it alleged that the defendants "operate[d] highly interactive websites through Alibaba and AliExpress, through which they [could] converse with consumers in New York and sell allegedly infringing products to them, and that they [did] so.").

Because George has shown that iHeat has had sufficient minimum contacts with New York, "the exercise of jurisdiction is favored" unless "the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In the absence of any argument by iHeat, the Court perceives no reason why exercising personal jurisdiction over iHeat would be unreasonable under the circumstances of this case. Therefore, the Court finds that it may properly exercise personal jurisdiction over iHeat.

### D. Liability

Having determined that it may exercise personal jurisdiction over iHeat, the Court turns to the question of whether it should enter a default judgment. By failing to appear in this action and respond to George's complaint, iHeat is deemed to have admitted the factual allegations in the complaint with respect to liability (as distinct from damages). *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."). "The decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015). Even when a defendant has admitted all well-pleaded facts in the complaint by virtue of default, a district court "need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop*, 645 F.3d at 137 (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Indeed, the Second Circuit has "suggested that, prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'" *Id.* (alteration in original) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

For the reasons that follow, the Court concludes that iHeat is liable to George for strict products liability—design defect, manufacturing defect, and failure to warn—and negligence.

#### 1. Strict Products Liability

"A strict products liability claim arises against a manufacturer, a retailer, or a commercial lessor of a product if (1) the product is defective, and (2) the defect caused plaintiff's injury." *Lewis v. Abbott Lab'ys*, No. 08-cv-7480, 2009 WL 2231701, at *4, 2009 U.S. Dist. LEXIS 131328, at *8 (S.D.N.Y. June 18, 2009), *report & recommendation adopted*, 2009 WL 2231701, 2009 U.S. Dist. LEXIS 64831 (S.D.N.Y. July 24, 2009). There are three types of product defects that are actionable under New York law: "(1) a manufacturing defect, which results when a

11

mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm"; (2) "a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm"; and (3) "a design defect, which results when the product as designed is unreasonably dangerous for its intended use." *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997) (citations omitted). George brings claims for strict products liability under all three theories. (Dkt. No. 1, ¶¶ 82–104).

### a. Design Defect

A "defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." *Voss v. Black & Decker Mfg. Co.*, 450 N.E.2d 204, 207 (N.Y. 1983) (quoting *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 403 N.E.2d 440, 443 (1980)). This "risk-utility" standard balances the design's social and individual utility against its risk of harm, while taking into account the availability and feasibility of safer designs. *See Maxwell v. Howmedica Osteonics Corp.*, 713 F. Supp. 2d 84, 90–91 (N.D.N.Y. 2010); *Robinson*, 403 N.E.2d at 443 ("Since no product may be completely accident proof, the ultimate question in determining whether an article is defectively designed involves a balancing of the likelihood of harm against the burden of taking precaution against that harm."). Ultimately, to prevail on a design defect claim, the plaintiff must show that: (1) "the product, as designed, posed a substantial likelihood of harm"; (2) "the defective design was a substantial factor in causing plaintiff's injury"; and (3) "it was feasible to design the product in a safer manner. *Maxwell*, 713 F. Supp. 2d at 90–91.

Here, George alleges that the insoles' design increased "the risk of fire or explosion and injury to the user while being used as intended." (Dkt. No. 1, ¶ 87). Specifically, he points to the dangers of their power source, lithium-ion batteries. (*Id.*). He states that they "can catch fire or explode without warning if they are overheated, damaged, defective, or have short-circuited . . . and that "[e]xtremely cold temperatures can . . . cause lithium-ion batteries to degrade and short-circuit." (*Id.* at ¶¶ 75, 79). According to George, these risks were exacerbated due to the batteries' placement in the heel of the insoles, as well as being advertised for use in cold temperatures. (*Id.* at ¶¶ 68, 87).

George alleges that that he used the insoles "as intended and in a reasonably foreseeable manner," (*id.* at ¶ 86), and that the insoles' design defects "were the sole and proximate cause of [his] injuries": "second- and third-degree burns to his right foot, significant and permanent disfiguration of his right foot and thigh, significantly impaired mobility, pain, and suffering, past and future medical expenses, lost past and future wages, and emotional distress." (*Id.* at ¶¶ 89–90).

Finally, he claims that it was feasible to design the insoles to be safer, "namely that a safer alternative to lithium batteries could have been used and/or greater protection could have been placed around the batteries to shield from damage and/or exposure from extreme hot and/or cold temperatures." (*Id.* at ¶ 88). Taking all of these allegations as true, George has sufficiently alleged a claim for design defect against iHeat.

b.  **Manufacturing Defect**

"To state a claim for manufacturing defect . . . the plaintiff must allege that (1) the product was defective due to an error in the manufacturing process and (2) the defect was the proximate cause of plaintiff's injury." *Williamson v. Stryker Corp.*, No. 12-cv-7083, 2013 WL

13

3833081, at *4, 2013 U.S. Dist. LEXIS 104445, at *10 (S.D.N.Y. July 23, 2013). "In other words, a manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all the other identical units." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001). "Strict liability is imposed for a manufacturing flaw or defect that renders the product not reasonably safe and is the proximate cause of injury." *Id.* at 85–86. Identifying a specific manufacturing defect, however, is not always required: "it is well-settled that a plaintiff may rely upon the circumstances of an accident to prove the existence of a manufacturing defect if the product did not perform as intended and the possibility of other causes has been excluded." *Williamson*, 2013 WL 3833081, at *5, 2013 U.S. Dist. LEXIS 104445, at *11–12.

      Here, many of same allegations that George relies on for his design defect claim support his manufacturing defect claim. (Dkt. No. 1, ¶¶ 20–25, 73, 75, 78). He alleges that the insoles caught fire, (*id.* at ¶ 23), he "made no alterations or changes to the lithium battery or heating mechanism," within the insoles (*id.* at ¶ 21), he used the insoles "as intended for the purpose of keeping his feet warm in cold temperatures," (*id.* at ¶ 22), the insoles "deviated from the expected performance of heated insoles of like kind and quality in that it is not expected that heated insoles of like kind and quality would catch fire in the ordinary course of their use," (*id.* at ¶ 94), and the defects were the "direct and proximate result" of his injuries, (*id.* at ¶ 97). In light of these allegations, and because George is not required to allege technical details regarding the specific manufacturing defect that caused the insoles to malfunction, *see Parillo v. Stryker Corp.*, No. 15-cv-155, 2015 WL 12748006, at *5, 2015 U.S. Dist. LEXIS 191834, at *11 (N.D.N.Y. Sep. 29, 2015), George has sufficiently stated a claim for manufacturing defect against iHeat.

14

### c. Failure to Warn

"Manufacturers have a duty to warn against 'latent dangers resulting from foreseeable uses of its product of which it knew or should have known,' and 'the danger of unintended uses of a product provided these uses are reasonably foreseeable.'" *Newell v. Ryobi Techs., Inc.*, No. 13-cv-8129, 2015 WL 4617184, at *3, 2015 U.S. Dist. LEXIS 101776, at *7, (S.D.N.Y. Aug. 3, 2015) (quoting *Liriano v. Hobart Corp.*, 700 N.E.2d 303, 305 (N.Y. 1998)). To succeed on a failure to warn claim, George must establish that: (1) the manufacturer had a duty to warn; (2) he used the product in a reasonably foreseeable manner; and (3) the failure to warn was the cause of his injury. *Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 413 (N.D.N.Y. 2012).

George's factual allegations are sufficient to state a failure to warn claim. He alleges that "iHeat knew or should have known of latent dangers resulting from the intended use of the iHeat heated insoles, namely that damaged, overheated, and overcharged lithium batteries could short circuit, catch fire, and explode." (Dkt. No. 1, ¶ 101). His complaint cites to national and international new articles documenting "reports of heated insoles catching fire and burning the users," as well as to two such incidents being litigated in United States District Courts. (*Id.* at ¶ 77). In addition, he alleges that Amazon's "seller central" website includes restrictions on lithium batteries, stating, "[i]f damaged, dropped, crushed, or short-circuited, they can release dangerous amounts of heat and may ignite." (*Id.* at ¶ 79 & n.6). Thus, George claims that "iHeat owed a duty to consumers to warn them of the dangers of fire and explosion that can happen if lithium batteries are damaged, short-circuiting, overcharging, and overheating." (*Id.* at ¶ 100).

He further alleges that iHeat breached the foregoing duty because "they failed to give any warnings or instructions about the dangers inherent in the use of lithium batteries." (*Id.* at ¶ 102). He states that the insoles' packaging, a box bearing the iHeat logo, (*id.* at ¶ 16), did not indicate

15

that the insoles' batteries were lithium, (*id.* at ¶ 17), and that the box and pamphlets inside the box did not include any warnings about lithium batteries. (*Id.* at ¶¶ 80–81).

George claims that he used the product in a reasonable, foreseeable manner. He alleges that the insoles "are advertised as shoe insoles that keep the user's feet warm in cold temperatures." (*Id.* at ¶ 68)*.* "On April 5, 2024, George turned on his iHeat heated insoles in accordance with the instructions, put them in his boots, put socks on his feet, and put his boots on," and set the insoles to the medium heat setting. (*Id.* at ¶¶ 18, 20). George states that he "made no alterations or changes to the lithium battery or heating mechanism in the iHeat heated insoles." (*Id.* at ¶ 21). He was using them "as intended for the purpose of keeping his feet warm in cold temperatures." (*Id.* at ¶ 22). Then, after about five minutes of outdoor wear, he "felt an electric shock to his right foot and his right boot burst into flames." (*Id.* at ¶ 23).

Finally, George claims that iHeat's failure to warn was, "the proximate cause of [his] harm, (*id.* at ¶ 103), and "no fault of [his] own," (*id.* at ¶ 104). All of these foregoing allegations are sufficient to state a failure to warn claim.

### 2. Negligence

To state a prima facie claim for negligence based on a defective product, a plaintiff must prove that: (1) "the manufacturer owed plaintiff a duty to exercise reasonable care"; (2) the manufacturer breached "that duty by fail[ing] to use reasonable care so that a product is rendered defective, *i.e.* reasonably certain to be dangerous"; (3) "the defect was the proximate cause of the plaintiff's injury"; and (4) the plaintiff sustained "loss or damage." *Colon*, 199 F. Supp. 2d at 82 (S.D.N.Y. 2001) (citing *McCarthy*, 119 F.3d at 156 and *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 185 (E.D.N.Y. 2001)). These elements are "not markedly dissimilar" from the requirement for strict products liability in New York. *See McCarthy*, 119 F.3d at 170 (Calabresi, J., dissenting) (explaining that the "primary difference between the two causes of action is that a

16

plaintiff may recover in strict products liability without showing that the defendant's *conduct* was wrongful, so long as its *product* was defective" (emphasis in original)). Furthermore, it is well-settled that a plaintiff may proceed on a negligence claim in the absence of evidence identifying a specific product defect, provided that he or she can "prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants." See *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 125 (2d Cir. 2006) (quoting *Speller ex rel. Miller v. Sears, Roebuck & Co.*, 790 N.E.2d 252, 254–55 (N.Y. 2003)), *aff'd*, 552 U.S. 312 (2008); *see also State Farm Fire & Cas. Co. v. Gen. Elec. Co.*, No. 12-cv-1032, 2015 WL 4496343, at *2, 2015 U.S. Dist. LEXIS 95828, at *3 (N.D.N.Y. July 23, 2015) ("A plaintiff need not prove a specific defect but may provide circumstantial evidence to support a finding that the product did not perform as intended and that other causes are excluded.").

Because the Court has already found that George adequately alleged strict liability claims for design defect, manufacturing defect, and failure to warn, George's negligence theory may prevail as well, so long as iHeat's conduct was wrongful, *i.e.*, that it failed to use reasonable care with respect to the product. *See, e.g.*, *Nelson v. Ranger, Inc.*, No. 05-cv-0093, 2009 WL 3851622, at *5, 2009 U.S. Dist. LEXIS 107014, at *17 (N.D.N.Y. Nov. 17, 2009) ("Where the plaintiff claims negligence under a design defect theory, the focus shifts from the characteristics of the product itself to the conduct of the manufacturer; plaintiff must additionally prove that the manufacturer could have foreseen the injury and, therefore, acted unreasonably in designing the product." (quoting *Mustafa v. Halkin Tool, Ltd.*, No. 00-cv-4851, 2007 WL 959704, at *10, 2007 U.S. Dist. LEXIS 23096, at *35-36 (E.D.N.Y. Mar. 29, 2007))).

George holds iHeat responsible for his injuries as the entity which "manufactured and designed" the insoles. (*Id.* at ¶¶ 83). The complaint alleges that "iHeat breached its duty by

17

failing to use reasonable care in the designing, manufacturing, testing, marketing, advertising, labeling, packaging, selling, and providing adequate warnings for the iHeat heated insole so that the iHeat heated insole was rendered defective and reasonably certain to be dangerous." (Dkt. No. 1, ¶ 107). George also alleges that the defects in the insoles caused them to catch fire and cause his injuries, and that they were the "sole and proximate cause" of those injuries. (*Id.* at ¶¶ 82–104). Therefore, the allegations in the complaint, taken as true, sufficiently state a claim for negligence against iHeat.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff George's Motion for Default Judgment (Dkt. No. 33) is GRANTED as to all claims against Defendant iHeat; and it is further

**ORDERED** that the Court will hold an evidentiary hearing on February 24, 2026, at 10:30 a.m. to determine damages in accordance with this order; and it is further

**ORDERED** that Plaintiff George shall file an exhibit list, a witness list and a memorandum of law by February 17, 2026; and it is further

**ORDERED** that Plaintiff George serve a copy of this Memorandum-Decision and Order on Defendant iHeat and file a certificate of service.

**IT IS SO ORDERED.**

Dated: January 22, 2026
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge